MAYER BROWN LLP
ANDREW J. PINCUS (*pro hac vice* application forthcoming)
apincus@mayerbrown.com
LEIF OVERVOLD (*pro hac vice* application forthcoming)
lovervold@mayerbrown.com
ZACHARY KRISLOV (*pro hac vice* application forthcoming)
zkrislov@mayerbrown.com
1999 K Street, NW
Washington, D.C. 20006-1101
Telephone:    (202) 263-3000
Facsimile:    (202) 263-3300

JUSTICE ACTION CENTER
KAREN C. TUMLIN (SBN 234691)
Karen.Tumlin@justiceactioncenter.org
ESTHER H. SUNG (SBN 255962)
Esther.Sung@justiceactioncenter.org
HILLARY LI (*pro hac vice* application forthcoming)
Hillary.Li@justiceactioncenter.org
EMILY SATIFKA (*pro hac vice* application forthcoming)
Emily.Satifka@justiceactioncenter.org
P.O. Box 27280
Los Angeles, CA 90027
Telephone:    (323) 316-0944

*Attorneys for Plaintiffs*
*EAST BAY SANCTUARY COVENANT and*
*IMMIGRATION INSTITUTE OF THE BAY AREA*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO/OAKLAND DIVISION

| | |
|---|---|
| EAST BAY SANCTUARY COVENANT, and<br><br>IMMIGRATION INSTITUTE OF THE BAY AREA,<br><br>          Plaintiffs,<br><br>v.<br><br>U.S. CITIZENSHIP AND IMMIGRATION SERVICES, and<br><br>U.S. IMMIGRATION AND CUSTOMS ENFORCEMENT,<br><br>          Defendants. | Case No. _____<br><br>**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF**<br><br>(Freedom of Information Act) |

## INTRODUCTION

1.    Plaintiffs East Bay Sanctuary Covenant ("EBSC") and the Immigration Institute of the Bay Area ("IIBA") bring this action against Defendants United States Citizenship and

Immigration Services ("USCIS") and United States Immigration and Customs Enforcement ("ICE") to compel compliance with the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552.

2.      As further alleged below, Plaintiffs have sought information from Defendants about the Deferred Action for Childhood Arrivals ("DACA") policy and in particular the severe delays DACA recipients around the country have experienced in renewing their grants of DACA since at least November 2025.  This information is directly relevant to Plaintiffs' mission to serve clients who are affected by the delayed renewals and advising them on how to navigate the consequences of these delays.  Plaintiffs also intend to widely disseminate this information to inform the public as part of their core mission of gathering and sharing immigration-related information in connection with their legal and advocacy work.

3.      The absence of any explanation for these delays in processing DACA renewal applications leaves Plaintiffs' clients and other DACA recipients at a loss as to how they should proceed in seeking to renew their DACA grants.  USCIS guidance recommends that DACA recipients submit their renewal requests between 120 days and 150 days before their current DACA grant will expire. Yet DACA recipients who follow this guidance are finding their current DACA grants lapse before their renewal requests are adjudicated, with potentially life-altering consequences that can include exposure to deportation, loss of work authorization, loss of education opportunities, and loss of employment (including employment that may provide a pathway to lawful status), or an accrual of unlawful presence that compromises their ability to obtain various forms of immigration relief.

4.      For example, one DACA recipient in Southern California came to the United States when she was eight months old and has had DACA since high school.  DACA allowed her to go to college, after which she found her calling as a special education teacher at a school that serves students interested in becoming police officers, EMTs, doctors, and firefighters.  She also plans to pursue a Master of Arts degree in fall 2026 to better serve her students.  She submitted her renewal application in November 2025, months before her DACA was set to expire in 2026, but her renewal has been pending for over six months without adjudication.  Because of the

2

COMPLAINT FOR DECLARATORY
AND INJUNCTIVE RELIEF

delay, her plans for the future are in limbo, and she lives in fear of immigration enforcement, including because she had to relinquish her REAL ID after her DACA grant expired. Her students are also harmed, because they rely on her consistent presence in the classroom. She and her husband have also been forced to leave their apartment and move in with family because they do not know when she will be able to work again.

5.      Among Plaintiffs' clients are individuals experiencing similar consequences due to delayed adjudication of DACA renewals. Plaintiffs seek information about delays in processing DACA renewal applications to be able to better advise their clients and other similarly-situated constituents. To that end, on May 7, 2026, Plaintiffs served their FOIA request on Defendants. Despite the clear statutory requirement that an agency respond to a FOIA request within 20 working days and Plaintiffs' request for expedited processing in light of the urgency to inform the public about Defendants' actions in operating the DACA program, Defendants have provided no response to Plaintiffs' FOIA request as of the filing of this complaint.

6.      Plaintiffs seek to compel Defendants to comply with their obligations under FOIA and promptly produce the requested information.

**JURISDICTION, VENUE, AND DIVISIONAL ASSIGNMENT**

7.      This Court has jurisdiction under 28 U.S.C. § 1331 and 5 U.S.C. § 552(a)(4)(B).

8.      Because Defendants failed to comply with the requirements to respond, as set forth in 5 U.S.C. § 552(a)(6)(A), Plaintiffs have constructively exhausted their administrative remedies and are entitled to proceed with this judicial action pursuant to 5 U.S.C. § 552(a)(6)(C)(i).

9.      Venue is proper in the Northern District of California under 5 U.S.C. § 552(a)(4)(B) and 28 U.S.C. § 1391(e) because Plaintiff EBSC has its principal place of business in Berkeley, California, and Plaintiff IIBA has its principal place of business in San Francisco, California.

10.     For the same reason, divisional assignment is proper in the San Francisco/Oakland Division. *See* Civil L.R. 3-2.

3

COMPLAINT FOR DECLARATORY
AND INJUNCTIVE RELIEF

**PARTIES**

11.     Plaintiff EBSC is a nonprofit organization incorporated in California.  Its principal place of business is in Berkeley, California.

12.     Plaintiff EBSC provides legal and other services to numerous noncitizens each year, including DACA recipients, whom EBSC assists with DACA renewals, advance parole applications, and other forms of relief, including family-based petitions, asylum, U visas, and Violence Against Women Act petitions.

13.     Plaintiff IIBA is a nonprofit organization incorporated in California.  Its principal place of business is in San Francisco, California.

14.     Founded in 1918, IIBA has provided legal services to noncitizens for over 100 years.  With seven offices across six counties in the California Bay Area, IIBA is the largest provider of immigration legal services in Northern California, and it provides legal services to DACA recipients, as well as to other immigrants, refugees, and their families.

15.     Defendants USCIS and ICE are agencies of the United States of America under 5 U.S.C. § 552(f)(1) and 5 U.S.C. § 551(1).

**STATUTORY BACKGROUND**

16.     Enacted in 1966, the Freedom of Information Act mandates disclosure of records held by a federal agency, in response to a request for such records by a member of the public, unless records fall within certain narrow statutory exemptions.  The "basic purpose of FOIA is to ensure an informed citizenry, vital to the functioning of a democratic society, needed to check against corruption and to hold the governors accountable to the governed." *NLRB v. Robbins Tire & Rubber Co.*, 437 U.S. 214, 242 (1978).  To accomplish this purpose, "FOIA was enacted to facilitate public access to government documents by establishing a judicially enforceable right to secure government information from possibly unwilling official hands." *Transgender L. Ctr. v. ICE*, 46 F.4th 771, 779 (9th Cir. 2022) (alterations incorporated).

17.     Under FOIA, upon receipt of a FOIA request, an agency must determine within 20 business days—or, in "unusual circumstances," within 30 business days—whether it will

4

comply with a request and notify the requester of its determination and reasoning in writing.  5 U.S.C. § 552(a)(6)(A)(i)-(B)(i).  This determination must also timely indicate the scope of the documents the agency intends to produce and the exemptions, if any, that it asserts will entitle it to withhold documents.  *Id.*

18.     FOIA also requires agencies to promulgate regulations that provide for expedited processing of FOIA requests where the requester demonstrates a "compelling need" as well as in "other cases determined by the agency."  5 U.S.C. § 552(a)(6)(E)(i).  FOIA defines "compelling need" to include requests "made by a person primarily engaged in disseminating information" where there is an "urgency to inform the public concerning actual or alleged Federal Government activity."  *Id.* § 552(a)(6)(E)(v)(II).

19.     Department of Homeland Security ("DHS") regulations require expedited processing of requests that involve, *inter alia*:

> (ii) An urgency to inform the public about an actual or alleged federal government activity, if made by a person who is primarily engaged in disseminating information;
>
> (iii) The loss of substantial due process rights; or
>
> (iv) A matter of widespread and exceptional media interest in which there exist possible questions about the government's integrity which affect public confidence.

6 C.F.R. § 5.5(e)(1).

20.     Agencies must make a determination on requests for expedited processing within 10 calendar days.  5 U.S.C. § 552(a)(6)(E)(ii)(I); *see also* 6 C.F.R. § 5.5(e)(4) ("A component shall notify the requester within ten calendar days of the receipt of a request for expedited processing of its decision whether to grant or deny expedited processing.").  If an agency grants expedited processing, it must process the request "as soon as practicable."  5 U.S.C. § 552(a)(6)(E)(iii); *see also* 6 C.F.R. § 5.5(e)(4).

21.     In response to a FOIA request, an agency, after engaging in a reasonable search for responsive records, must disclose in a timely manner all records that do not fall within nine narrowly construed statutory exemptions.  5 U.S.C. § 552(a)(3)(A), (C), (b)(1)-(9).

5

22.     Typically, a FOIA requester must appeal agency action administratively before commencing litigation.  However, if the agency has failed to abide by its obligations and issue a determination on the request or a determination on an administrative appeal within the statutory timeframe, the administrative appeal process is considered exhausted.  5 U.S.C. § 552(a)(6)(C)(i).  As to requests made to DHS agencies, such as USCIS and ICE, a requester need not administratively appeal a denial of a request for expedited processing before commencing litigation.  6 C.F.R. § 5.8(e).

23.     The FOIA statute provides that the fees associated with the processing of requests shall be waived or reduced "if disclosure of the information is in the public interest because it is likely to contribute significantly to public understanding of the operations or activities of the government and is not primarily in the commercial interest of the requester."  5 U.S.C. § 552(a)(4)(A)(iii).  It further provides that "an agency shall not assess any search fees . . . under this subparagraph if the agency has failed to comply with any time limit under [5 U.S.C. § 552(a)(6)]" unless a determination is made that certain specified unusual circumstances apply. 5 U.S.C. § 552(a)(4)(viii)(I).

24.     Upon complaint, a district court can enjoin an agency from withholding records and order production of records improperly withheld.  5 U.S.C. § 552(a)(4)(B).

## FACTUAL ALLEGATIONS

### A.    BACKGROUND

25.     USCIS represents that it adjudicates "the majority" of DACA renewal requests "within 120 days," and "strongly encourage[s]" DACA recipients to submit renewal requests between 120 and 150 days prior to the date their current DACA grant expires.  *See I-821D, Consideration of Deferred Action for Childhood Arrivals*, USCIS (June 1, 2026), https://www.uscis.gov/i-821d.  Since at least November 2025, however, DACA recipients nationwide—including Plaintiffs' clients—have been experiencing severe delays in adjudication

6

of their DACA renewals that significantly exceed the 120- to 150-day time frame provided by USCIS.[1]

26.    EBSC, for example, has over one thousand DACA clients and submits approximately 500 DACA renewal requests annually.  As of June 23, 2026, 319 of the DACA renewals EBSC filed since November 2025 remain pending, some of which have been pending for more than six months.  Despite submitting their renewals within the timeframe recommended by USCIS of 120 to 150 days, some EBSC clients have lost their DACA protection and work authorization before their renewal requests were adjudicated.

27.    IIBA also submits many DACA renewal requests each year—over 800 in 2025—and likewise has been seeing its clients face the consequences of significant delays in adjudication.  IIBA staff report that while adjudication of DACA renewal requests used to regularly take one or two months, recently its clients have been waiting around six months for a decision.  Due to these delays, IIBA clients' DACA grants and work authorization have lapsed, resulting in gaps in deferred action and lost jobs and educational opportunities.

28.    By causing individuals' DACA to lapse before their renewal is approved, these delays unleash cascading consequences: upon expiration of the work authorization provided by DACA, individuals' jobs are at risk, their state-issued documents like driver's licenses become invalid, and without DACA's protection from deportation, individuals become vulnerable to removal from the country.[2]  The delays are also increasing during a time of broader changes in

---

[1] *See, e.g.*, Santiago Caicedo, *South Texas Immigration Attorneys Report Pattern of DACA Processing Delays*, KRGV (Apr. 27, 2026), https://www.krgv.com/news/south-texas-immigration-attorneys-report-pattern-of-daca-processing-delays; Lasherica Thornton, *Prolonged DACA Renewals Put California Educators With Temporary Immigration Status in Limbo*, EdSource (Apr. 23, 2026), https://edsource.org/2026/daca-renewal-delays-educators/756448; Regina Waldroup, *"It Has Been Crickets": DACA Recipients Frustrated With Renewal Delays*, NBC Chicago (Apr. 2, 2026), https://www.nbcchicago.com/news/local/it-has-been-crickets-daca-recipients-frustrated-with-renewal-delays/3917448.

[2] *See, e.g.*, Aniyah Robinson & Payton Steiner, *"Shouldn't They Want You Here?": DACA Delays Force Wichita Teacher Out of Work*, KSN (Mar. 25, 2026), https://www.ksn.com/news/local/shouldnt-they-want-you-here-daca-delays-force-wichita-teacher-out-of-work; Josh Marcus, *"You Feel Like a Dog": Trump Administration DACA Delays are Causing Immigrants to Lose Work and Risk Getting Deported*, Independent (Mar. 15, 2026),

COMPLAINT FOR DECLARATORY
AND INJUNCTIVE RELIEF

immigration enforcement patterns targeting DACA recipients for detention and deportation. Between January and November 2025 alone, Defendant ICE arrested 261 DACA recipients and deported 86 of them.[3]

29.     The consequences of delayed DACA renewals have a profound impact on DACA recipients, their families, and their communities.  For example, a 26-year-old graduate from a top medical school is unable to begin his residency in anesthesiology because his DACA renewal has not yet been adjudicated.[4]  Similarly, a DACA recipient who completed his fellowship in orthopedic surgery in New York was set to begin a position in an underserved medical center in rural Pennsylvania later this year, but has not been able to work since February due to the delay in his DACA renewal.[5]  And nurses at Kaiser Permanente in the Bay Area have been placed on unpaid leave after their DACA lapsed, despite filing for renewals over four months in advance.[6] For these individuals and the many others experiencing delayed DACA renewal adjudications, the delays have jeopardized not only their educations, careers, and livelihoods, but also threaten their ability to provide for their families and care for their communities through the service professions to which they have dedicated themselves.

30.     Moreover, lapses in DACA can complicate and even thwart individuals' efforts to obtain a pathway to lawful permanent status in the United States.  For DACA recipients pursuing employment-based pathways to lawful permanent status, their loss of DACA while their renewal

https://www.independent.co.uk/news/world/americas/us-politics/trump-daca-deportation-kristi-noemb2938925.html.

[3] Camilo Montoya-Galvez, *ICE Arrested 261 DACA Recipients Over 10 Months in Last Year, Document Shows*, CBS News (Feb. 25, 2026), https://www.cbsnews.com/news/daca-recipients-ice-arrested-2025-trump-administration.

[4] Daniela Pierre-Bravo, *DACA Recipients Are Losing Protections and Work Permits as Renewal Delays Surge*, CNN (May 16, 2026), https://www.cnn.com/2026/05/16/business/daca-processing-delays.

[5] *Id.*

[6] Andrea Castillo & Brittny Mejia, *"Easily Discarded": Processing Delays Leave DACA Recipients Jobless and Fearing Deportation*, L.A. Times (May 27, 2026), https://www.latimes.com/politics/story/2026-05-27/renewal-delays-leave-daca-recipients-jobless-fearing-deportation.

COMPLAINT FOR DECLARATORY
AND INJUNCTIVE RELIEF

request is pending can disrupt or terminate the employment relationships that form the foundation of their employment-based petitions. DACA recipients on the verge of employer sponsorship can have their opportunities derailed when a DACA renewal gap causes them to lose their jobs or prompts employers to withdraw sponsorship rather than navigate the resulting legal uncertainty. In addition, a person with a gap in status begins accruing unlawful presence in the United States, which may cause them to trigger certain grounds of inadmissibility that—absent a waiver—may prevent them from obtaining employment-based and other forms of immigration relief.

31.    Despite the worsening delays and policy shifts, filing renewals earlier than the timeline recommended by USCIS is not always advisable. USCIS has indicated that renewals submitted more than 150 days in advance may be rejected. *See* USCIS, Form I-821D, Instructions for Consideration of Deferred Action for Childhood Arrivals 1 (Jan. 20, 2025), https://www.uscis.gov/sites/default/files/document/forms/i-821dinstr.pdf. In addition, all approvals take effect immediately, which means that an early approval has the practical effect of cutting short a DACA recipient's prior 2-year grant, thereby reducing the total amount of time of protection from removal that the recipient could have received. Accordingly, DACA recipients face a difficult choice when determining when to submit their renewal request in the face of these unexplained and unpredictable processing delays.

32.    On May 8, 2026, USCIS issued a Policy Alert entitled "Deferred Action as an Extraordinary Use of Prosecutorial Discretion," announcing new guidance in the USCIS Policy Manual that characterizes deferred action as an "extraordinary use of prosecutorial discretion" to be granted only in "compelling or extraordinary circumstances." *See* USCIS, PA-2026-01, Deferred Action as an Extraordinary Use of Prosecutorial Discretion (Deferred Action as an Extraordinary Use) 1, (May 8, 2026), https://www.uscis.gov/sites/default/files/document/policy-manual-updates/20260508-DeferredAction.pdf. This policy is effective immediately and, by its terms, applies to deferred action requests pending or filed after May 8, 2026. *See id.* DACA recipients do not currently

COMPLAINT FOR DECLARATORY
AND INJUNCTIVE RELIEF

have clarity as to how this will affect DACA renewal applications, adding more uncertainty to their lives.[7]

## B.    PLAINTIFFS' FOIA REQUEST

33.    On May 7, 2026, EBSC and IIBA, together with co-counsel Justice Action Center and another requester, Path2Papers, submitted a FOIA request to USCIS and ICE via online submission ("FOIA Request").  A true and correct copy of this request is attached as Exhibit A to this complaint.  The FOIA Request seeks two categories of requested records:

(1) All policies, guidance, correspondence and communications (including emails, Microsoft Teams correspondence, and attachments thereto), and other documents created since January 20, 2025, whether formal or informal, and all revisions of such policies, guidance, correspondence, communications, and documents related to changes in the processing and adjudication of DACA renewal requests (Form I-821D) and associated Employment Authorization Document ("EAD") renewal requests (Form I-765), including, but not limited to, records concerning the following:

a. Processing and adjudicating, including putting on hold, requests to expedite DACA renewal requests and DACA EAD renewal requests;

b. Accepting, rejecting, processing, adjudicating, or holding DACA renewal requests and DACA EAD renewal requests based on any of the following: (i) Timing of filing, including requests filed more than 150 days prior to the expiration of the applicant's existing DACA grant; (ii) Applicant's characteristics, including country of origin, current place of residence, criminal history, or any other individual characteristic; or (iii) Presidential Proclamations 10949 or 10998;

c. USCIS internal and external guidance or recommendations regarding timing for DACA recipients to submit DACA renewal requests and DACA EAD renewal requests;

d. Reassignment of USCIS adjudicatory personnel off or onto the DACA processing workload;

e. Changes to DACA renewal request processes leading to longer wait times including but not limited to background checks, any computer technical issues, and the return of biometric appointments;

f. Information sharing between USCIS and ICE regarding expiration of DACA grants or pending renewal requests;

g. ICE detention of DACA recipients and placement of DACA recipients in removal proceedings, or any other use of any civil immigration enforcement action against DACA recipients;

---

[7] While the memorandum does not expressly list all of the deferred action programs to which it applies, it references DACA in a footnote.  *See* Deferred Action as an Extraordinary Use at 1 n.3.

COMPLAINT FOR DECLARATORY
AND INJUNCTIVE RELIEF

h. Internal deliberations or decisions regarding whether to publish, or to continue publishing, update more frequently, or discontinue publishing, DACA processing times, including average processing times, for DACA renewal and DACA EAD renewal requests;

i. Internal deliberations or decisions regarding whether to continue or discontinue availability of the "e-request" functionality for DACA renewal requests pending outside of normal processing times.

(2) All records, including reports, communications (including emails, Microsoft Teams correspondence, and attachments thereto), datasheets, spreadsheets, and dashboards reflecting or containing the following data, whether broken out by month(s) or in aggregate, since May 2025, with respect to DACA renewal requests (Form I-821D) and associated Employment Authorization Document ("EAD") renewal requests (Form I-765):

a. The average processing time;

b. The number of renewal requests (i) received; (ii) adjudicated, including aggregated by outcome; (iii) pending for individuals whose DACA status had expired; and (iv) filed that month that remain unadjudicated, including those USCIS has placed on hold;

c. The number of inquiries regarding renewals falling outside normal processing times, including inquiries by or on behalf of DACA applicants, including by phone call, online via USCIS's Check Case Processing E-Request, and through Congressional offices;

d. The number of renewal requests that have been suspended, since December 2, 2025, pursuant to the December 2, 2025 USCIS Policy Memorandum entitled "Hold and Review of all Pending Asylum Applications and all USCIS Benefit Applications Filed by Aliens from High-Risk Countries," the January 1, 2026 USCIS Policy Memorandum entitled "Hold and Review of USCIS Benefit Applications Filed by Aliens from Additional High-Risk Countries," and/or any other directive or policy issued on or after December 2, 2025, resulting in a suspension or hold of DACA renewal requests submitted by individuals from countries listed in Presidential Proclamation 10949 or 10998;

e. The number of both resolved and pending Congressional inquiries, including inquiries with requests for expedited processing, including by the state of the congressional member;

f. The average number of days renewal requests were pending at the USCIS Lockbox before being processed and the average number of days renewal requests were pending at the Lockbox before being issued a receipt notice;

g. Testing and updates conducted by technical teams or contractors that manage Electronic Immigration System ("ELIS") and other electronic processing tools USCIS uses to manage DACA and DACA-related EAD filings, and if bugs were identified, the number of days that it took USCIS to remediate any bugs.

34.    EBSC and IIBA requested expedited processing of the FOIA Request under 6 C.F.R. § 5.5(e)(1)(ii)-(iv). *See* Ex. A at 5-7.

11

COMPLAINT FOR DECLARATORY
AND INJUNCTIVE RELIEF

35. EBSC and IIBA explained that there was an urgency to inform the public about the requested records under 6 C.F.R. § 5.5(e)(1)(ii) because "delays in processing of DACA renewal requests and DACA EAD renewal applications—as well as lapses in DACA and the detention and deportation of DACA recipients—have been the subject of extensive media coverage, reflecting public interest in the issue." Ex. A at 5; *see* 6 C.F.R. § 5.5(e)(3) (explaining that "[t]he existence of numerous articles published on a given subject can be helpful to establishing the requirement that there be an 'urgency to inform' the public on the topic"). They further explained that "DACA renewal processing delays and the resulting consequences—such as job loss, family separation, detention, and deportation—have been covered by numerous sources in the past month alone, including N.P.R., Democracy Now!, Newsweek, P.B.S., the Associated Press, and local ABC and NBC affiliates." Ex. A at 5 & n.4. And they noted that "[t]he subject of this Request has also been the subject of at least three congressional inquiries in March and April 2026." *Id.* at 5 & n.5.

36. EBSC and IIBA further explained that the dissemination of information is a core aspect of their work. EBSC explained that it "regularly engages in gathering and sharing information for its legal and advocacy work, including sharing resources and policy and litigation updates with the public on various issues related to immigration" and "maintains a significant online presence, including its website and social media accounts, which are frequently visited by the public." Ex. A at 6. And EBSC noted that it "issues a regular e-mail newsletter, with over 2,000 subscribers" to share news alerts and "uses a mass text messaging platform to share information with DACA recipients." *Id.*

37. IIBA similarly explained that its work "includes regular efforts to spread information and educate its clients and the public," including "sharing immigration-related news and resources on its website and social media accounts, including Instagram, Facebook, and LinkedIn." Ex. A at 6. IIBA noted that it "regularly engages in community outreach, such as providing Know Your Rights presentations, training staff at other legal services organizations, presenting on panel discussions, and tabling at outreach events to answer questions and

COMPLAINT FOR DECLARATORY
AND INJUNCTIVE RELIEF

disseminate information." *Id.*  And it explained that it "is part of funded collaboratives in two counties where they act as 'trusted messengers,' by working to prepare and share materials with the goal of making accurate immigration-related updates and guidance more accessible to the public." *Id.*

38.    As an additional basis for expedited treatment, EBSC and IIBA explained that "expedited processing is warranted because delayed processing of DACA renewal requests and loss of work authorization threatens '[t]he loss of substantial due process rights.'"  Ex. A at 7; *see* 6 C.F.R. § 5.5(e)(1)(iii).

39.    And as a third basis for expedited treatment, EBSC and IIBA explained that expedited processing is further warranted because the subject of this Request is "'[a] matter of widespread and exceptional media interest in which there exist possible questions about the government's integrity which affect public confidence.'"  Ex. A at 7 (quoting 6 C.F.R. § 5.5(e)(1)(iv)).  They explained that "the subject of this Request has been the subject of extensive media coverage," and that "[r]ecent delays in DACA renewals and DACA EAD renewals raise questions about the government's operation of a longstanding policy impacting hundreds of thousands of people nationwide, as the government's own guidance on timing is inconsistent with the experiences of much of the affected population." *Id.*  Finally, they noted that "[t]his discrepancy has left many frustrated and concerned by the government's failure to provide public information regarding its operation of DACA." *Id.*

## C.    FAILURE TO RESPOND TO FOIA REQUESTS

40.    Pursuant to FOIA, within 20 business days, excluding public holidays, of receipt of the FOIA Request—that is, no later than June 5, 2026—USCIS and ICE were required to "determine . . . whether to comply with such request" and to "immediately notify" Plaintiffs of "such determination and the reasons therefor," and, in the case of an adverse determination, EBSC's and IIBA's appeal rights.  5 U.S.C. § 552(a)(6)(A)(i).

41.    On June 15, 2026, USCIS acknowledged receipt of the FOIA request and assigned it the control number COW2026004497.  A true and correct copy of USCIS's letter is

COMPLAINT FOR DECLARATORY
AND INJUNCTIVE RELIEF

attached as Exhibit B.  It indicated that USCIS was invoking 5 U.S.C. § 552(a)(6)(B) to extend the time period to respond to the FOIA Request by 10 days due to the asserted "unusual circumstances" that USCIS's FOIA office had received an increasing number of FOIA requests and that, to respond to the FOIA Request, USCIS would need to locate and review documents from multiple offices and may have to consult with other agencies or DHS components.  *Id.* at 3.  With a 10-day extension, USCIS's determination whether to comply with the FOIA Request was due no later than June 22, 2026.  USCIS failed to respond to the FOIA Request by this deadline.

42.     ICE has not acknowledged or responded to the FOIA Request.

43.     USCIS and ICE have accordingly failed to "make reasonable efforts to search" for records to respond to the FOIA Request.  5 U.S.C. § 552(a)(3)(C).

44.     USCIS and ICE further failed to make a final determination regarding the FOIA Request within the time limits prescribed by FOIA.  5 U.S.C. § 552(a)(6)(A)(i).

45.     USCIS and ICE have accordingly failed to conduct an adequate search for responsive records to the FOIA Request, and have failed to produce any responsive records.

**D.     FAILURE TO GRANT EXPEDITED PROCESSING**

46.     Under the FOIA statutory deadlines, USCIS and ICE were further required to provide EBSC and IIBA with a decision on their request for expedited processing by May 18, 2026.

47.     In its June 15 letter, USCIS denied Plaintiffs' request for expedited processing, asserting without explanation that USCIS has "determined that expedited processing of [the] request is not warranted."  Ex. B at 2.

48.     As of the date of this complaint, ICE has failed to respond to EBSC and IIBA's request for expedited processing.

**E.     FAILURE TO PROVIDE FEE WAIVER**

49.     In the FOIA Request, EBSC and IIBA also sought a fee waiver of all costs incurred by Defendants in answering the request because the information sought was "likely to

14

COMPLAINT FOR DECLARATORY
AND INJUNCTIVE RELIEF

contribute significantly to public understanding of the operations or activities of the government and [was] not primarily in the [Plaintiff's] commercial interest." 5 U.S.C. § 552(a)(4)(A)(iii).

50.     As Plaintiffs explained, a fee waiver is warranted because the FOIA Request "seeks to contribute to the public's understanding of the operations and activities of the federal government—namely, the government's operation of DACA, a policy that impacts hundreds of thousands of people in the United States and that has maintained nationwide interest since it began in 2012." Ex. A at 8.  They further noted that the requested information, which is not already in the public domain, "would contribute to the understanding of 'a reasonably broad audience of persons interested in the subject,'" given Plaintiffs' "'expertise in the subject area'— as organizations that provide legal and social services to thousands of noncitizens each year, including thousands of DACA recipients—and their 'ability and intention to effectively convey information to the public.'" *Id.* (quoting 6 C.F.R. § 5.11(k)(2)(iii)); *see also* 6 C.F.R. § 5.11(k)(2)(ii) (noting information is not likely to contribute to an increased public understanding whether the information "already is in the public domain, in either the same or a substantially identical form").

51.     Plaintiffs also explained that they do not have a commercial interest in the requested information and made the request to educate the public. *See* Ex. A at 8.  EBSC explained that it "intends to review, analyze, and disseminate the records received through this Request through various means, including posting the information on its website and social media accounts and sharing the information on its newsletter and texting platforms." *Id.*  IIBA further explained that it "also plans to share the records obtained through this Request on its website and social media platforms, and during educational programming such as Know Your Rights presentations, panel presentations, and legal trainings." *Id.*

52.     In its June 15 letter, USCIS granted Plaintiffs' request for a fee waiver. Ex. B at 3.

53.     However, as of the date of this complaint, ICE has failed to respond to Plaintiffs' request for a fee waiver.

15

COMPLAINT FOR DECLARATORY
AND INJUNCTIVE RELIEF

54.    In addition, because Defendants have failed to comply with the time limits specified in 5 U.S.C. § 552(a)(6) for their responses to the FOIA Request, Defendants may not assess any search fees or duplication fees to Plaintiffs.  5 U.S.C. § 552(a)(4)(A)(viii)(I).

**FIRST CAUSE OF ACTION**
**Violation Of 5 U.S.C. § 552(a)(6)(A) For**
**Failure To Comply With Statutory Deadlines**
**Against Defendants USCIS and ICE**

55.    Plaintiffs incorporate each of the foregoing paragraphs of this Complaint.

56.    Pursuant to 5 U.S.C. § 552(a)(6)(A)(i) and B(i), Defendants had twenty or, at most, thirty business days from receipt of the FOIA Request to notify Plaintiffs of Defendants' determination whether to comply with the FOIA Request and the reasons for that determination.

57.    To date, Defendants have not provided any notice to Plaintiffs of their determination whether to comply with the FOIA Request and the reasons for such determination.

58.    Defendants have failed to comply with the requirements to respond as set forth in 5 U.S.C. § 552(a)(6)(A)(i).

59.    Because Defendants have failed to comply with the requirements to respond as set forth in 5 U.S.C. § 552(a)(6)(A)(i) and B(i), Plaintiffs have constructively exhausted their administrative remedies and are entitled to proceed with this judicial action pursuant to 5 U.S.C. § 552(a)(6)(C)(i).

60.    Under 5 U.S.C. § 552(a)(4)(B), when an agency "improperly with[o]ld[s]" records, this Court may "enjoin the agency from withholding agency records" and "order the[ir] production."

61.    Under 5 U.S.C. § 552(a)(4)(A)(viii)(I), because Defendants have failed to comply with the time limits of 5 U.S.C. § 552(a)(6), they are barred from assessing any search or duplication fees to Plaintiffs.

**SECOND CAUSE OF ACTION**
**Violation Of 5 U.S.C. § 552(a)(6)(E) For**
**Failure To Grant Expedited Processing**
**Against Defendants USCIS and ICE**

62.    Plaintiffs incorporate each of the foregoing paragraphs of this Complaint.

16

COMPLAINT FOR DECLARATORY
AND INJUNCTIVE RELIEF

63. Plaintiffs properly requested records within Defendants' custody and control on an expedited basis.

64. Plaintiffs' FOIA Request justifies expedited processing under FOIA and 6 C.F.R. § 5.5(e)(4).

65. Pursuant to FOIA, 5 U.S.C. § 552(a)(6)(E), agencies must promulgate regulations that provide for expedited processing of FOIA requests where the requester demonstrates a "compelling need" as well as in "other cases determined by the agency." *Id.* § 552(a)(6)(E)(i).

66. Pursuant to FOIA and DHS regulations, 5 U.S.C. § 552(a)(6)(E)(ii)(I); 6 C.F.R. § 5.5(e)(4), Defendants must decide whether to grant a request for expedited processing and notify the requester of their determination within 10 calendar days after the date of the request.

67. Defendants failed to issue a determination on the request for expedited processing within the timeframe set by statute and DHS regulations.

68. Defendant USCIS subsequently denied Plaintiffs' request for expedition, contrary to the factual and legal showing Plaintiffs made demonstrating that expedited processing is warranted.

69. Because FOIA and the DHS regulations do not require an administrative appeal of an adverse determination regarding a request for expedited processing, Plaintiffs have exhausted their administrative remedies.

70. Plaintiffs are entitled to declaratory and injunctive relief requiring Defendants to grant expedited processing of their FOIA Request.

**THIRD CAUSE OF ACTION**
**Violation Of 5 U.S.C. § 552(a)(3) For**
**Failure To Conduct An Adequate Search For Responsive Records**
**Against Defendants USCIS and ICE**

71. Plaintiffs incorporate each of the foregoing paragraphs of this Complaint.

72. Pursuant to FOIA, 5 U.S.C. § 552(a), Plaintiffs have a statutory right to access the requested agency records.

73. Pursuant to FOIA, 5 U.S.C. § 552(a)(3)(C), Defendants must "make reasonable efforts to search" for the information requested.

17

COMPLAINT FOR DECLARATORY
AND INJUNCTIVE RELIEF

74.     Upon information and belief, Defendants possess records responsive to Plaintiffs' FOIA Request that they have failed to produce without justification.

75.     Upon information and belief, Defendants' failure to produce responsive records is a result of their failure to make reasonable efforts to search for the information requested.

76.     Because Defendants have failed to comply with the requirements to respond as set forth in 5 U.S.C. § 552(a)(6)(E)(ii)(I) and 6 C.F.R. § 5.5(e)(4), Plaintiffs have constructively exhausted their administrative remedies.

77.     Under 5 U.S.C. § 552(a)(4)(B), when an agency "improperly with[o]ld[s]" records, this Court may "enjoin the agency from withholding agency records" and "order the[ir] production."

### FOURTH CAUSE OF ACTION
### Violation Of 5 U.S.C. § 552(a)(4)(A)(iii)
### For Failure To Grant Waiver Of Fees
### Against Defendant ICE

78.     Plaintiffs incorporate each of the foregoing paragraphs of this Complaint.

79.     Plaintiffs requested a fee waiver under 5 U.S.C. § 552(a)(4)(A)(iii) on the grounds that disclosure of the requested records is in the public interest and is "likely to contribute significantly to public understanding of the operations or activities of the government and is not primarily in the commercial interest of the requester."  5 U.S.C. § 552(a)(4)(A)(iii).

80.     Defendant ICE failed to respond to Plaintiffs' fee waiver request within the statutory 20-day time limit for responding to FOIA requests.

81.     Because Defendants have failed to comply with the requirements to respond as set forth in 5 U.S.C. § 552(a)(6)(A)(i) & B(i), Plaintiffs have constructively exhausted their administrative remedies and are entitled to proceed with this judicial action pursuant to 5 U.S.C. § 552(a)(6)(C)(i).

82.     Defendant ICE has not given Plaintiffs written notice of unusual circumstances excusing a late response, and no unusual or exceptional circumstances exist that might excuse a late response.  5 U.S.C. § 552(a)(4)(A)(viii)(II).

18

83.    Defendant ICE's failure to grant Plaintiffs a waiver of fees associated with the production of responsive documents violates 5 U.S.C. § 552(a)(4)(A)(iii).

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs respectfully request that this Court enter a judgment for Plaintiffs and award the following relief:

A.    Declare that Defendant ICE has violated FOIA by failing to make a determination regarding Plaintiffs' request for expedited processing within the statutory time limit;

B.    Declare that each Defendant has violated FOIA by failing to make a determination with respect to Plaintiffs' FOIA Request within the statutory time limit;

C.    Declare that each Defendant has violated FOIA by failing to produce non-exempt records responsive to Plaintiffs' FOIA Request within the statutory time limit;

D.    Declare that Defendant ICE has violated FOIA by failing to grant Plaintiffs a waiver of all fees associated with the search for and production of the requested records;

E.     Order each Defendant to respond to the FOIA Request by a date or dates certain, by (a) immediately notifying Plaintiffs whether they will comply with the FOIA Request and the reasons for their determination; (b) conducting a search using "reasonable effort[s]" "for the purpose of locating those records which are responsive" to the FOIA Request, as required by 5 U.S.C. §§ 552(a)(3)(C)-(D); (c) demonstrating that they have conducted an adequate search; and (d) producing to Plaintiffs all non-exempt records or portions of records responsive to the FOIA Request, as well as a *Vaughn* index of any records or portions of records withheld due to a claim of exemption;

F.    Order each Defendant to process Plaintiffs' FOIA Request on an expedited basis;

G.    Order Defendant ICE to grant Plaintiffs a waiver of all fees associated with the search for and production of the requested records;

H.    Award Plaintiffs their costs and attorney fees reasonably incurred in this action, pursuant to 5 U.S.C. § 552(a)(4)(E); and

I.    Grant such other and further relief as the Court may deem just and proper.

19

COMPLAINT FOR DECLARATORY
AND INJUNCTIVE RELIEF

DATED:   June 25, 2026

Respectfully submitted,

/s/ Esther H. Sung

Esther H. Sung (SBN 255962)
Karen C. Tumlin (SBN 234691)
Hillary Li (*pro hac vice* application forthcoming)
Emily Satifka (*pro hac vice* application forthcoming)

Justice Action Center
P.O. Box 27280
Los Angeles, CA 90027
(323) 316-0944
Karen.Tumlin@justiceactioncenter.org
Esther.Sung@justiceactioncenter.org
Hillary.Li@justiceactioncenter.org
Emily.Satifka@justiceactioncenter.org

Andrew J. Pincus (*pro hac vice* application forthcoming)
Leif Overvold (*pro hac vice* application forthcoming)
Zachary Krislov (*pro hac vice* application forthcoming)
Mayer Brown LLP
1999 K Street, NW
Washington, DC 20006-1101
Telephone: (202) 263-3000
apincus@mayerbrown.com
lovervold@mayerbrown.com
zkrislov@mayerbrown.com

*Attorneys for Plaintiffs*
*EAST BAY SANCTUARY COVENANT and*
*IMMIGRATION INSTITUTE OF THE BAY AREA*

COMPLAINT FOR DECLARATORY
AND INJUNCTIVE RELIEF